**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**PHILLIP MILLER, et al.,**

      **Plaintiffs,**                        **Case No. 2:13-cv-501**
                                           **JUDGE GREGORY L. FROST**
**v.**                                    **Magistrate Judge Mark R. Abel**

**DELAWARE COUNTY
COMMISSIONERS, et al.**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of three motions to dismiss: (1) Defendants Walter L. Davis III, John Doe One, John Doe Two, and Kevin Ullom's motion to dismiss (ECF No. 19), Plaintiffs' memorandum in opposition (ECF No. 26), and Defendants' reply (ECF No. 33); (2) Defendants John Doe Three, Carol O'Brien, Greg Tapocsi, and Brian Walters' motion to dismiss (ECF No. 20), Plaintiffs' memorandum in opposition (ECF No. 27), and Defendants' reply (ECF No. 31); and (3) Defendants Delaware County Commissioners, Delaware County Prosecutor's Office and Delaware County Sheriff's Department's motion to dismiss (ECF No. 21), Plaintiffs' memorandum in opposition (ECF No. 25), and Defendants' reply (ECF No. 32).  For the reasons that follow, the Court **GRANTS** Delaware County Commissioners, Delaware County Prosecutor's Office and Delaware County Sheriff's Department's motion, and **GRANTS IN PART** and **DENIES IN PART** the remaining motions.

## I.      BACKGROUND

Plaintiffs Philip and Cathy Miller, a married couple residing in Delaware County, Ohio, were investigated, tried, and acquitted of theft charges.  Plaintiffs now bring this action against the law enforcement officers who investigated them and the prosecutors who tried them.

Plaintiffs also name the Delaware County Commissioners, Delaware County Sheriff's Department and Delaware County Prosecutors Office as Defendants.

The facts set forth in this Opinion and Order are taken from Plaintiffs' Complaint and assumed true for purposes of this motion to dismiss. At the heart of this matter is Cathy Miller's mother, Betty Robbins. Ms. Robbins and Plaintiffs shared a close relationship. Prior to 2009, Plaintiffs and Ms. Robbins shared a residence and frequently commingled money. Ms. Robbins made Cathy Miller an authorized user on her credit cards and bank accounts and gave Cathy Miller power of attorney over her (Ms. Robbins') affairs.

Cathy Miller's other siblings, Larry Robbins (brother), Vikki Lutz (sister), and Steven Lutz (brother-in-law) (collectively, "Sibling Defendants"), did not see Ms. Robbins frequently. Sibling Defendants did not share a close relationship with Ms. Robbins.

In late 2009, Plaintiffs informed Sibling Defendants that Ms. Robbins was suffering from dementia and living in a nursing home. A few months later, in April 2010, Vikki and Steven Lutz visited Ms. Robbins in the nursing home. The Lutzes had Ms. Robbins sign papers revoking Cathy Miller's power of attorney and appointing themselves as Ms. Robbins' power of attorney.

In July 2010, Sibling Defendants met with a detective at the Delaware County Sheriff's Department. Sibling Defendants accused Plaintiffs of stealing money from Ms. Robbins and urged law enforcement personnel to investigate them. The case eventually was assigned to Defendant Kevin Ullom, a detective in the Delaware County Sheriff's Department. Defendant Walter Daivs III was the Sheriff assigned to oversee employees such as Detective Ullom (collectively, "Law Enforcement Defendants").

Although Plaintiffs state several times in their briefs that Law Enforcement Defendants conducted "no investigation" of Sibling Defendants' allegations, it is clear from the Complaint that at least some investigation was conducted. For example, Plaintiffs allege that someone from the Delaware County Sheriff's Department investigated Phillip Miller's credit. (Compl. ¶ 35.) Detective Ullom later attended a guardianship hearing, which Plaintiffs also attended, regarding Ms. Robbins. (Compl. ¶ 41.) Detective Ullon also "communicated frequently" with Sibling Defendants regarding their allegations against Plaintiffs. (Compl. ¶ 43.)

Ultimately, Detective Ullom recommended that Delaware County prosecutors seek an indictment against Plaintiffs. In doing so, Detective Ullom allegedly gave false and/or misleading information to the prosecutors. Detective Ullom told prosecutors that Plaintiffs had refused to be interviewed (which was not true), and that Cathy Miller had transferred a life insurance policy into her own name (which was misleading, because Ms. Robbins had actually signed and approved the transfer). Plaintiffs allege that Detective Ullom's investigation was inadequate for a number of reasons: he did not interview Ms. Robbins, did not investigate the Larry Robbins's criminal background, failed to discover that Cathy Miller was an authorized user on Ms. Robbins' accounts, and failed to interview Plaintiffs despite their willingness to be interviewed, among other things. Plaintiffs also allege that Detective Ullom's reports contained a number of factual inaccuracies.

Based on this allegedly flawed information, Delaware County prosecutors sought and obtained an indictment against Plaintiffs. Defendant Carol O'Brien was responsible for the decision to seek charges. Defendant O'Brien assigned the case to assistant prosecutors Greg Taposci and Brian Walters, whom Plaintiffs also named as defendants in this action (collectively with Defendant O'Brien, "Prosecutor Defendants").

A grand jury indicted Plaintiffs for violations of Ohio Revised Code 2913.02(A)(2) and (3).[1]  An arrest warrant followed, and Plaintiffs were arrested in the front yard of their home. Plaintiffs allege that they were arrested "in the most horrifying and shocking way when police cars with lights and sirens stormed their home on May 27, 2011."  (Compl. ¶ 64.)

Following the arrest, Plaintiffs spent six days in jail.  Plaintiffs attended their arraignment, pleaded not guilty, and were released pending trial.  In the meantime, Defendant O'Brien ran news releases about Plaintiffs' arrest on two local news stations, ran a story and Plaintiffs' mug shots on the Delaware County Prosecutor's web site, and ran a front page advertisement in the Delaware Gazette discussing Plaintiffs in conjunction with Elder Abuse Awareness Day.  The story and advertisement, which Prosecutor Defendants attach to their motion to dismiss, state that Plaintiffs were indicted on two counts of theft for taking large amounts of money from Cathy Miller's mother.

Plaintiffs' case proceeded to trial.  Plaintiffs allege that Prosecutor Defendants engaged in the following misconduct:  they failed to interview any witnesses from the defense's list, failed to interview Plaintiffs, failed to recognize that Plaintiffs' exhibits proved Plaintiffs' innocence, proceeded with the case despite knowing that key witness testimony would exonerate Plaintiffs, improperly sought continuances of the trial, improperly engaged in ex parte communications with the trial judge, and purposefully elicited perjured testimony from witnesses.

Plaintiffs were acquitted of all charges against them.  Approximately one year later, Plaintiffs filed the present action.  Among other damages, Plaintiffs allege that Phillip Miller was forced to quit his job in October 2011 in order to access a 401(k) to fund Plaintiffs' legal fees.

---

[1]Defendants attached copies of the indictments, as well as the Request for Issuance of Warrant Upon Indictment, to their motion to dismiss.  (ECF No. 19-1, 19-2, 19-3, and 19-4.)  Because these documents are referenced throughout the Complaint and are central to Plaintiffs' claims, the Court may consider them without converting Defendants' motions to motions for summary judgment.  Fed. R. Civ. P. 12; *see also Basset v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

The gravamen of Plaintiff's Complaint is that the prosecutors and law enforcement personnel failed to engage in a "meaningful investigation" before prosecuting Plaintiffs. (Compl. ¶ 133.) Plaintiffs also theorize that Defendants O'Brien, Walter, and John Does One through Four (unknown supervisors) failed to supervise and teach their subordinates how to properly conduct a criminal investigation. Finally, Plaintiffs claim that the supervisors' failures are due to Delaware County's lack of policies and procedures "regarding training in investigatory techniques." (Compl. ¶ 183.)

Sibling Defendants answered Plaintiffs' Complaint. (ECF No. 36.) The remaining Defendants now move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    ANALYSIS

Dismissal pursuant to Rule 12(b)(6) is proper if the complaint fails to state a claim upon which the Court can grant relief. Fed. R. Civ. P. 12(b)(6). A court analyzing a Rule 12(b)(6) motion to dismiss may consider the complaint, public records, and documents central to the claim that are referenced in the complaint. *Basset v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The court must construe the pleading in favor of the party asserting the claim, accept the factual allegations contained therein as true, and determine whether those factual allegations present a plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

To be considered plausible, a claim must be more than merely conceivable. *Bell Atl. Corp.*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).  "Factual content" requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  In other words, a court need not "accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Assuming all well-pleaded allegations as true, "Rule 12(b)(6) is the appropriate vehicle to analyze the viability of the legal theories on which a plaintiff bases his or her claim." *Perkins v. Wells Fargo Bank, N.A.*, No. 2:11-cv-952, 2012 WL 5077712, at *5 (S.D. Ohio Oct. 18, 2012).  The defendant bears the burden of demonstrating that the plaintiff failed to state a claim for relief. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

### A.  Federal Claims

The Court first analyzes Plaintiffs' federal claims for relief.  Plaintiffs bring four separate claims under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

Thus, in order to assert valid § 1983 claims, Plaintiffs must show that Defendants, while acting under color of state law, deprived her of a right secured by the Federal Constitution or laws of the United States. *See Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003).

Plaintiffs allege that Defendants violated their Fourth and Fourteenth Amendment rights.  Specifically, Plaintiffs bring the following § 1983 claims: one claim against Prosecutor Defendants and Law Enforcement Defendants  for violating Plaintiffs' Fourth Amendment rights (Count Four), one claim against Law Enforcement Defendants for violating Plaintiffs' Fourth

Amendment rights (Count Five), one claim against Prosecutor Defendants and Law Enforcement Defendants for violating Plaintiffs' Fourteenth Amendment rights (Count Six), and one claim against Delaware County Commissioners, Delaware County Sheriff's Department, Delaware County Prosecutor's office, Walter Davis (individual and official capacities) and Carol O'Brien (individual and official capacities) for failure to train and supervise in violation of the Fourth and Fourteenth Amendments (Count Seven).

The Court will address each of these theories.  Following that discussion, the Court will address whether Defendants are immune from liability for Plaintiffs' claims.

*1.  Fourth Amendment Violations (Counts Four and Five)*

Plaintiffs allege that Defendants, acting under color of state law, deprived them of their Fourth Amendment right to be free from unreasonable searches and seizures.  Defendants characterize Counts Four and Five as claims of malicious prosecution under the Fourth Amendment.  Plaintiffs do not dispute that characterization.

The Sixth Circuit recognizes a "constitutionally cognizable claim of malicious prosecution under the Fourth Amendment." *Barnes v. Wright*, 449 F.3d 709, 715 (6th Cir. 2006) (citing *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003)).  "Such a claim encompasses wrongful investigation, prosecution, conviction, and incarceration."  *Id*. at 716. Because the Fourth Amendment only protects individuals against *unreasonable* searches and seizures, a plaintiff asserting a Fourth Amendment §1983 claim "must show, at a minimum, that there was no probable cause to justify his arrest and prosecution."  *Id*. (quoting *Thacker*, 328 F.3d at 259) (internal quotations omitted).

The first issue is whether the grand jury's indictment precludes Plaintiffs' claim that Defendants lacked probable cause to arrest and prosecute them.  In the Sixth Circuit, "the finding

of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Id.* (citing *Higgason v. Stephens,* 288 F.3d 868, 877 (6th Cir.2002)). In other words, a grand jury indictment that is "fair upon its face" is conclusive proof that Plaintiffs cannot state a claim for wrongful investigation, arrest, or prosecution under § 1983.

Plaintiffs argue that a grand jury indictment imposes only a "rebuttable presumption" of probable cause, but that argument ignores binding Sixth Circuit precedent. The *Barnes* court clearly stated that an indictment has a "preclusive effect" on § 1983 claims for malicious prosecution. *See id.*; *see also Cook v. McPherson,* 273 F. App'x 421, 423–24 (6th Cir. 2008); *Bakos v. City Olmstead Falls*, 73 F. App'x 152, 156–58 (6th Cir. 2003); *Higgason v. Stephens,* 288 F.3d 868, 877 (6th Cir.2002). The Sixth Circuit has confronted and conclusively rejected Plaintiff's argument that the state law standard for malicious prosecution claims should apply to federal claims under § 1983. *See Bakos*, 73 F. App'x at 156–58. Accordingly, Plaintiffs' citation to *Harris v. United States*, 422 F.3d 322 (6th Cir. 2005), in which the court analyzed a state law claim for malicious prosecution, is misleading and irrelevant to this § 1983 analysis.

The question thus becomes whether the indictment in this case was "fair upon its face." *Barnes*, 449 F.3d at 716. "An exception to the *Barnes* rule applies where the indictment was obtained wrongfully by defendant police officers who knowingly present false testimony to the grand jury." *Cook*, 273 F. App'x at 424.

Here, Plaintiffs allege that Defendant Ullom "knowingly gave the grand jurors false information at the grand jury hearing, resulting in a significantly flawed proceeding." (Compl. ¶ 61.) Specifically, Plaintiffs allege that Defendant Ullom falsely testified that Plaintiffs refused to be interviewed and refused to cooperate in the investigation. (Compl. ¶ 57.) Plaintiffs also

allege that Defendant Ullom knowingly gave the grand jury inaccurate information regarding "the ownership of a life insurance policy, the gift of one of Mrs. Robbins' vehicles to another relative," and several other issues.  (Compl. ¶ 59.)  And although the Complaint is somewhat unclear, Plaintiffs purport to allege that Defendant Davis and Prosecutor Defendants knew that the grand jury considered false information in issuing its indictment.  (Compl. ¶¶ 65, 88.) Necessarily taking these allegations as true and drawing all reasonable inferences in Plaintiffs' favor, it cannot be said at this stage of the litigation that the grand jury indictment precludes Plaintiffs' Fourth Amendment § 1983 claims.

Defendants' additional arguments as to why Plaintiffs failed to allege a lack of probable cause are not compelling.  The Court agrees with Defendants that Plaintiffs have no right to an "adequate investigation" independent of their Fourth Amendment claims, but that contention does not explain why probable cause necessarily existed in this case.  Defendants also argue that they were justified in seeking the indictment, as evidenced by the trial judge's statement that the prosecutors were "[f]ully justified in bringing the case."  (ECF No. 19, at 10 (citing Trial Transcript Excerpt of Verdict).)  But such "conclusive proof," (id.), is not properly before the Court on this Rule 12(b)(6) motion to dismiss.  Even if the Court were to consider the trial transcripts, Defendants cite no authority that would allow the Court to accept the trial judge's factual conclusions at the pleadings stage of this litigation.  Accordingly, these arguments fail to defeat Plaintiffs' claims.

Defendants' next argument is that Law Enforcement Defendants cannot be liable for a Fourth Amendment malicious prosecution claim because they did not "make, influence, or participate in the decision to prosecute."  (ECF No. 19, at 6); *see also Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007).  The Complaint, however, alleges that Law Enforcement Defendants

knowingly provided incomplete and inaccurate reports to the prosecutor's office, then "urged the prosecution" of Plaintiffs despite knowing that the grand jury indictment was flawed, among other things.  (Compl. ¶¶ 59–61, 65, 133–34.)  The Court finds these allegations sufficient.  Accordingly, Counts Four and Five withstand Defendants' motions to dismiss.

### 2.  *Fourteenth Amendment Violations (Count Six)*

In addition to their Fourth Amendment claims, Plaintiffs assert a claim under § 1983 for violations of their Fourteenth Amendment rights.  Specifically, Plaintiffs allege that Defendants failed to investigate Sibling Defendants' allegations before arresting, detaining and prosecuting Plaintiffs, which "caused [them] to be unlawfully detained and prosecuted and therefore deprived them of their constitutional and fundamental right to liberty and freedom from unlawful arrest and prosecution."  (Compl. ¶¶ 171–75.)  Plaintiffs allege that this deprivation violated their substantive due process rights under the Fourteenth Amendment.

It is well settled that "the concept of substantive due process has no place when a provision of the Constitution directly addresses the type of illegal governmental conduct alleged by the plaintiff."  *Montgomery v. Carter Cty.*, 226 F.3d 758, 769 (6th Cir. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)); *see also Thompson v. Ohio State Univ.*, No. 2:12-cv-1087, 2014 WL 32257, at *9 (S.D. Ohio Jan. 6, 2014) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).  Defendants argue, and the Court agrees, that Plaintiffs cannot maintain a Fourteenth Amendment claim based on the same conduct they target in their Fourth Amendment claims.  In other words, Plaintiffs cannot use substantive due process as a "fallback constitutional provision" since the Fourth Amendment directly addresses the subject matter of their Fourteenth Amendment claim.  *Boroff v. Van Wert City Bd. of Educ.,* 220 F.3d 465, 471 (6th Cir. 2000).

Plaintiffs do not directly address Defendants' argument.  Instead, Plaintiffs contend that they have a right to privacy against arbitrary intrusion by law enforcement personnel, and that Defendants, "without justification, invaded [Plaintiffs'] privacy, turned their private lives upside down, traumatized them, and then splashed their faces all over Delaware County accusing them of abusing the elderly."  (ECF No. 27, at 6.)  But the allegations underlying those claims overlap with those underlying Plaintiffs' Fourth Amendment malicious prosecution claim.  Those allegations therefore cannot state a claim for Fourteenth Amendment violations.  *See Boroff*, 220 F.3d at 471.

To the extent Plaintiffs are arguing that their allegations of "splash[ing] their faces all over Delaware County" go beyond the scope of their malicious prosecution claim, those allegations also fail to state a claim under the Fourteenth Amendment.  To allege a Fourteenth Amendment substantive due process claim, Plaintiffs had to allege facts suggesting that Defendants' conduct was so arbitrary as to "shock the conscience."  *Garcia v. Thorne*, 520 F. App'x 304, 309 (6th Cir. 2013) (citing *Jones v. Byrnes*, 585 F.3d 971, 976 (6th Cir. 2009)); *Thompson*, 2014 WL 32257, at *8–9.[2]  The standard for such claims is "very high."  *Garcia*, 520 F. App'x at 309.

Defendants' alleged defamatory conduct does not "shock the conscience" in the constitutional sense.  First, as Defendants point out, the press releases state only that Plaintiffs were indicted by a grand jury, which was technically true.  Second, even if the grand jury indictment was based on false statements, and even if Defendant O'Brien knew or should have

---

[2] Although Plaintiffs vaguely suggest that Defendants' conduct violates their fundamental right to be free from "arbitrary intrusion by the police," they do no explain or argue how Defendant O'Brien's news and press releases violated a "fundamental right" secured by the Fourteenth Amendment, which generally include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion."  *Myers v. Delaware Cty., Ohio*, No. 2:07-cv-844, 2008 WL 4862512, at *10 (S.D. Ohio Nov. 7, 2008) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).  Accordingly, the Court will address Plaintiffs' allegations under the Fourteenth Amendment's "shocks the conscience" standard only.

known of that fact, her press releases do not rise to the "shock the conscience" level. *See id.* (discussing examples of conduct that reaches the "shock the conscience" level and noting that such conduct must be "truly extraordinary in nature" to qualify as conscience shocking (quoting *Draw v. City of Lincoln Park*, 491 F.3d 550, 556 (6th Cir. 2007)).  In short, something more than misleading statements must be shown. *Compare Beck v. Benton*, No. 3:09CV2179, 2010 WL 481254, *4 (N.D. Ohio Feb. 5, 2010) (a police officer's false statement in the context of an investigation does not shock the conscience) *with Myers v. Delaware Cty., Ohio*, 2:07-cv-844, 2008 WL 4862512, at *10–11 (S.D. Ohio Nov. 7, 2008) (a defendant's defamatory press release that a fellow officer had child pornography on his computer "shocked the conscience" when the defendant knew the pornography was related to an official investigation yet released the statement anyway because of a personal vendetta against the plaintiff, despite advice "in the strongest terms" that the press release violated department policies).  Count Six therefore fails to state a claim upon which the Court can grant relief.

### 3. Failure to Train and Supervise in Violation of the Fourth Amendment (Count Seven)[3]

Plaintiffs assert claims against Defendants Walter and O'Brien, in their individual and official capacities, for failure to train and supervise their subordinates.  Plaintiffs also assert a failure to train claim against Delaware County Commissioners, Delaware County Sherriff's Department, and Delaware County Prosecutor's Office (collectively, "Delaware County").  Specifically, Plaintiffs allege that Defendants' lack of a "training program in investigatory techniques" proximately caused the "botched investigation that led to the unlawful arrest and

---

[3] Plaintiffs claim that Defendants' failure to train their employees violated the Fourteenth Amendment, in addition to the Fourth Amendment.  Because the Court finds that Plaintiffs fail to state a claim under the Fourteenth Amendment, they similarly cannot maintain a failure to train claim under the Fourteenth Amendment.

malicious prosecution of two innocent people," which violated Plaintiffs' Fourth Amendment rights.  (Compl. ¶ 180.)

The Court first addresses the claim against Delaware County Commissioners and Defendants Walter and O'Brien in their official capacities.[4]  A § 1983 claim against a government official in his or her official capacity is "merely another name for a claim against the municipality."  *Essex v. Cty. Of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013).  Such a claim attaches liability only to the government entity.  *Id.*  Such a claim also invokes the rules of municipality liability under § 1983 set forth in *Monell v. New York City Deptartment of Social Services*, 436 U.S. 658, 692 (1978) and subsequent Supreme Court case law.

Under *Monell* and its progeny, "[a] municipality or other local government may be liable under this section if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (citing *Monell*, 436 U.S. at 691).  Local governments are responsible for their own illegal acts; they cannot be held vicariously liable for their employees' actions under § 1983.  *Id.* (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).  Thus, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury."  *Id.* (citing *Monell*, 436 U.S. at 691).  "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.  *Id.*  However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Id.* (citing *Oklahmoa City v. Tuttle*,

---

[4] Defendants argue that "Delaware County Sheriff's Department" and "Delaware County Prosecutor's Office" are not the proper defendants in this action, but concede that the claims against Defendants Walter and O'Brien in their official capacities invoke municipality liability.  Defendants' proposed distinction is of no consequence for purposes of this Opinion and Order.  For ease of reference, the Court will refer to the claims against Defendants Walter and O'Brien in their official capacities as claims against Defendants Delaware County Sheriff's Department and Delaware County Prosecutor's Office, respectively.

471 U.S. 808, 822–823 (1985)).  "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to *deliberate indifference* to the rights of persons with whom the untrained employees come into contact."  *Id*. (citing *Canton v. Ohio*, 480 U.S. 378, 388 (1989) (emphasis added)).

A plaintiff can allege "deliberate indifference" in one of two ways.  Ordinarily, it is necessary to show a "pattern of similar constitutional violations by untrained employees" in order to show that policymakers had notice of and "deliberately [chose] a training program that will cause violations of constitutional rights."  *Id*. (citing *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)).  Absent a pattern of violations, a plaintiff may assert a "single incident" theory of liability by alleging that the Constitutional deprivation at issue was the "obvious" consequence of the defendant's failure to provide specific training.  *Id*.  The latter theory is "rare" and exists "in a narrow range of circumstances."  *Id*.

Here, Plaintiffs do not attempt to plead a pattern of violations that would have put Defendants on notice that a training program was necessary.  Plaintiffs' claim therefore relies on the rarely-successful theory of "single incident" liability.  The Court finds that Plaintiffs' claim suffers from several deficiencies that warrant dismissal.

First, Plaintiffs' claim for failure to train rests entirely on conclusory allegations that cannot state a claim for relief.  Plaintiffs' response to Defendants' argument on this point is telling.  Rather than pointing to facts that support their claim, Plaintiffs assert that Defendants lacked policies and procedures regarding proper investigatory techniques, cite pre-*Twombly* cases discussing Rule 8's minimal pleading requirements, and argue that they cannot know more without the benefit of discovery.  (ECF No. 27, at 12–13.)  But *Twombly* and *Iqbal* preclude that argument.  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678; *see also Simms v. City of New*

14

*York*, No. 10-CV-3420, 2011 WL 4543051, at *2 n.3 (E.D.N.Y. Sept. 28, 2011) (dismissing a plaintiff's failure to train claim that set forth only conclusory allegations and rejecting the plaintiff's argument that he could not know more without the benefit of discovery); *Mason v. City of Warren Police Dep't*, No. 10-CV-14182, 2011 WL 5025841, at *12 (E.D. Mich. Oct. 21, 2011) (citing *Iqbal* and dismissing a failure to train claim at the pleadings stage).  Without more, any plaintiff could turn a § 1983 claim into a failure to train claim simply by reciting the *Connick* and *Canton* standards.  Such a barebones recitation cannot state a claim for municipal liability.

Moreover, Plaintiffs' allegations do not establish "single incident" liability under *Connick*.  In *Connick*, the Supreme Court held that the municipality could not be liable for its failure to train prosecutors about their legal obligations with regard to exculpatory evidence.  131 S. Ct. at 1361–64.  The Court noted that, because attorneys are trained in law school and through continuous legal education, and because the requested training was something that could be taught in the classroom, there was no obvious need for training in order to prevent constitutional violations.  *See id*. at 1361–63.  The Court contrasted the case before it with the example of police officers tasked with making "split-second decisions with life-or-death consequences," who may be unaware of the constitutional constraints on the use of deadly force.  *See id*. at 1361 (citing *Canton*).  In the latter case, but not the former, "there is an obvious need for some form of training."  *Id*.

Plaintiffs allege that Defendants lacked any policies regarding "investigatory techniques," which is a basic skill for both prosecutors and law enforcement personnel.  Such training is more analogous to the classroom-type training discussed in *Connick*—which all police officers and prosecutors receive—and less analogous to the "split-second decision" training discussed in *Canton*.  Indeed, as Defendants point out, peace officers in Ohio are required to complete basic

training courses that address "investigation," among other subjects.  Ohio Admin. Code § 109:2-1-16.  Plaintiffs fail to allege facts to support the inference that, absent additional specified training, it was highly predictable that Law Enforcement Defendants and Prosecutor Defendants would make mistakes in investigations that would cause constitutional violations.  *See Connick*, 131 S. Ct. at 1365.  Plaintiffs therefore failed to allege deliberate indifference such that they cannot state a claim for municipal liability against Delaware County.

The claim against Defendants Walter and O'Brien in their individual capacities warrants a separate analysis.  Defendants argue that these claims should be dismissed because Defendants Walter and O'Brien did not directly participate in or encourage the specific conduct at issue.  But, as stated earlier, Plaintiffs alleges that both Law Enforcement Defendants gave false information to prosecutors while, at the same time, urging Plaintiffs' prosecution.  Plaintiffs similarly allege that Defendant O'Brien participated in Plaintiffs' prosecution and reported Plaintiffs' arrest to the public, despite knowing that the grand jury considered false information in issuing its indictment.  The Court finds these allegations sufficient to infer direct participation.

Defendants do not offer any additional arguments as to why Count Seven must be dismissed against Defendants Walter and O'Brien in their individual capacities.  Accordingly, these claims survive Defendants' motion to dismiss.

### B.  Immunity: Federal Claims

Having found that Counts Four, Five, and Seven survive against certain Defendants, the Court now considers whether those Defendants are immune from suit.  Defendants argue that Prosecutor Defendants are absolutely immune from liability on each of Plaintiffs' claims and that Law Enforcement Defendants are entitled to qualified immunity.

### 1. Absolute Immunity

It is well settled that prosecutors are entitled to absolutely immunity under § 1983 when he or she "acts within the scope of his duties in initiating and pursuing a criminal prosecution." *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011) (citing *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)). Courts look to "the nature of the function performed" to determine whether a prosecutor is entitled to absolute immunity. *Id.* (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Acts of advocacy, including evaluating evidence, preparing a case for trial, and preparing and examining witnesses (even eliciting false testimony from those witnesses), therefore cannot form the basis of a lawsuit under § 1983. *Id.*; *see also Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997) (absolute immunity applies to a prosecutor's decision to bring a criminal complaint and seek an arrest warrant). If a court finds that absolute immunity applies, it should dismiss the § 1983 claim. *See, e.g., Cooper v. Parrish*, 203 F.3d 397, 955 (6th Cir. 2000).

In response to Defendants' argument that absolute immunity bars Plaintiffs' § 1983 claims against Prosecutor Defendants, Plaintiffs argue that absolute immunity does not apply when prosecutors take actions that are "more akin" to law enforcement investigations. (ECF No. 27, at 6–7 (citing *Buckley*, 509 U.S. at 272–73).) Plaintiffs argue that, since Prosecutor Defendants should have (but failed) to conduct any investigation, absolute immunity does not apply.

That argument defies logic. The Court cannot find that Prosecutor Defendants were acting as "investigators" for immunity purposes while, at the same time, accepting Plaintiffs' allegations that Defendants conducted no investigation. Instead, the Court must focus on alleged misconduct in this case: that Prosecutor Defendants prosecuted Plaintiffs without probable cause. The "functions" performed include evaluating the evidence and deciding to take Plaintiffs' case

to trial. Because these functions are acts of advocacy, *Adams*, 656 F.3d at 401, absolute immunity shields Prosecutor Defendants from liability.

Plaintiffs suggest that this analysis creates an unfair result. But the Supreme Court has recognized and accepted that risk, stating, "[t]o be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler*, 424 U.S. at 427. The Court concluded that such a risk is an unfortunate side effect of the need to protect "the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Id*. at 427–28. Plaintiffs' claims of unfairness therefore do not alter the Court's analysis.

In light of the foregoing, absolutely immunity applies in this case. Plaintiffs' § 1983 claim against Prosecutor Defendants fails to state a claim for relief.

### 2. *Qualified Immunity*

Unlike prosecutors, law enforcement personnel are other government officials are only entitled to "qualified immunity" under § 1983. This issue is far less cut and dry than the issue of absolute immunity.

In general, "[q]ualified immunity shields government officials from liability and from suit for damages for discretionary actions taken in the performance of their duties as long as they did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, (6th Cir. 2011). When a defendant raises qualified immunity at the pleadings stage, "the court must determine only whether the complaint adequately alleges the commission of acts that violated clearly established law." *Id*. (citing *Back v. Hall*, 537 F.3d 552, 555–56 (6th Cir. 2008)).

Law Enforcement Defendants make three arguments in support of their claim that qualified immunity applies.  First, they argue that Plaintiffs do not have an independent right to an adequate investigation.  The Court agrees.  But Plaintiffs' allegations of an inadequate investigation are relevant to their claim that Defendants prosecuted them without probable cause.  The right to be free from such prosecution is clearly established.  *See, e.g., Spurlock v. Satterfield*, 167 F.3d 995, 1005 (6th Cir. 1999).

Law Enforcement Defendants next argue that Plaintiffs failed to allege facts sufficient to support the inference that Defendants *knew* they were depriving Plaintiffs of a clearly established right.  But, as stated above, Plaintiffs allege that Law Enforcement Defendants knowingly provided false information to prosecutors and knowingly gave false testimony to the grand jury.  Whether Law Enforcement Defendants did, in fact, have such knowledge is an issue that cannot be resolved at the pleadings stage.

Finally, Law Enforcement Defendants assert that "Ullom had probable cause when he reported his conclusions to the prosecutors after his investigation," (ECF No. 19, at 15), but fail to explain how the facts alleged in the Complaint, taken in the light most favorable to Plaintiffs, necessitate a finding of probable cause.  Law Enforcement Defendants therefore fail to establish that qualified immunity applies at this stage of the litigation.  As a result, Counts Four, Five, and Seven survive Defendants' motions to dismiss as they relate to Law Enforcement Defendants.

**C.  State law claims**

The Court next addresses Plaintiffs' state law claims for relief.  The Court will then address Defendants' arguments that they are immune from liability on Plaintiffs' state law claims.

### 1. *Malicious Prosecution (Count One – all Defendants)*

To bring a malicious prosecution claim under Ohio law, a plaintiff must allege: (1) malice, (2) lack of probable cause, (3) termination of the prosecution in their favor, and (4) seizure of plaintiffs' person or property during the course of the prior proceedings. *Gugliotta v. Morano*, 161 Ohio App. 3d 152, 167, 852 N.E.2d 757 (Ohio Ct. App. 2005). Unlike federal law, Ohio law does not consider a grand jury indictment preclusive evidence of probable cause for purposes of a malicious prosecution claim. Rather, under Ohio law, the return of an indictment by a grand jury is "prima facie evidence of probable cause" that a plaintiff may rebut. *Deoma v. Shaker Heights*, 68 Ohio App. 3d 72, 77, 587 N.E.2d 425, 428 (Ohio Ct. App. 1990).

Defendants argue that Plaintiffs' allegations do not reflect a lack of probable cause, but their argument relies almost exclusively on evidence outside the pleadings. Defendants argue, for example, that the grand jury transcript supports their arguments, and that the trial judge denied Plaintiffs' motions under Ohio Rule of Criminal Procedure 29 and therefore found that probable cause existed. But even if the Court did consider the grand jury transcripts at this stage of the litigation, Defendants cite no authority that would allow the Court to accept the trial judge's factual findings. Instead, the Court is bound by Plaintiffs' allegations, which state that Defendants knowingly provided false testimony to the grand jury. Such allegations are sufficient to rebut the presumption of probable cause afforded by the grand jury indictment.

Defendants' next argument, that Plaintiffs failed to plead malice, similarly fails. Plaintiffs alleged, *inter alia*, that Defendants knowingly provided false information to a grand jury in order to obtain an indictment. Although the Court agrees with Defendants that the Complaint does not identify a motive or purpose for Defendants' alleged conduct, Plaintiffs'

allegations are sufficient to support the inference that such a motive exists.  The Court declines to dismiss Count One for lack of malice at this stage of the litigation.

      *2. Invasion of Privacy (Count Two – Defendant O'Brien)*

Plaintiffs allege that Defendant O'Brien defamed them and invaded their privacy when she released several statements reporting that Plaintiffs were indicted for stealing money from Cathy Miller's mother.  In response to Defendants' motion to dismiss this claim, Plaintiffs do not recite the standard under which they bring this claim or cite analogous case law in which a court has held that such conduct constitutes an "invasion of privacy."  Nevertheless, the Court finds that Plaintiffs' claim withstands Defendant O'Brien's motion to dismiss.

In her motion, Defendant O'Brien argues that the news releases referencing the grand jury indictment did not contain any false information.  Defendant O'Brien concludes, without citing any authority, that the truthfulness of her alleged news releases precludes any claim for false light invasion of privacy.  But the tort protects against more than just false statements.  *See* Restatement (Second) of Torts § 652E (a plaintiff need not be defamed to pursue a false light claim; "[i]t is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false"); *Welling v. Weinfeld*, 113 Ohio St. 3d 464, 2007 Ohio 2451, 866 N.E.2d 1051, at ¶ 59 (adopting § 652E in Ohio).  If the grand jury indictment were obtained by false testimony and Defendants knew of that fact, publicizing the indictment without reference to the false testimony could arguably place Plaintiffs in a "false light."  *See, e.g., Penwell v. Taft Broadcasting Co*., 13 Ohio App. 3d 382, 385, 469 N.E.2d 1025 (12th Dist. 1984) (suggesting that a plaintiff could have had an actionable claim against a news station that broadcast news of his arrest if the broadcast aired after the station knew of the plaintiff's innocence).  Defendant O'Brien fails to convince the Court that the technical "truth"

of her press release forecloses a claim for false light.  As such, Count Two withstands Defendant O'Brien's motion to dismiss.

   3.  *Intentional Infliction of Emotional Distress ("IIED") (Count Three – All Defendants)*

   Defendants offer two arguments as to why Plaintiffs cannot state a claim for IIED.  First, Defendants argue that they acted with probable cause such that their conduct cannot be "extreme or outrageous" as a matter of law.  Because the Court already held that Defendants failed to demonstrate that Plaintiffs' allegations necessitate a finding of probable cause, that argument fails.

   Second, Defendants argue that Plaintiffs failed to provide facts in support of their claim, but that argument similarly fails.  Plaintiffs' factual allegations, taken as true, support the inference that they suffered emotional distress.  Plaintiffs were not required to present *evidence* at the pleadings stage to support those allegations.  Defendants' cited caselaw, in which the courts considered summary judgment motions, therefore is inapposite.

   **D.  Immunity: State Law Claims**

   The Court now considers whether Defendants are immune from Plaintiffs' state law claims.  As with Plaintiffs' federal claims, the Court finds that Prosecutor Defendants are immune from liability, but that Law Enforcement Defendants fail to meet their burden of establishing immunity at this stage of the litigation.  The Court also finds that Delaware County is immune from liability on Plaintiffs' state law claims.

   1.  *Prosecutor Defendants*

   Pursuant to Ohio Revised Code 2744.03(A)(7):

   The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant of any such person, or a judge of a court of this state is

entitled to any defense or immunity available at common law or established by the Revised Code.

"[I]t is well-settled common law in Ohio that prosecutors enjoy absolute immunity from suit for acts committed in their roles as judicial officers. Prosecutors are considered quasi-judicial officers, and as such they are entitled to absolute immunity when their activities are 'intimately associated with the judicial phase of the criminal process.' " *Hawk v. Am. Elec. Power Co.*, 3d Dist. No. 1-04-65, 2004 Ohio 7042, at ¶ 8 (citing *Willitzer v. McCloud*, 6 Ohio St. 3d 447, 449, 453 N.E.2d 693 (1983)). "The decision to initiate, maintain or dismiss criminal charges is at the core of the prosecutorial function." *Id.* ¶ 9 (citing *McGruder v. Necaise*, 733 F.2d 1146, 1148 (5th Cir. 1984)). As such, absolute immunity protects prosecutors from claims of malicious prosecution. *Id.*

In response to this authority, Plaintiffs make the same arguments they made against federal immunity—that Prosecutor Defendants "should have been acting as investigators" such that immunity does not apply. The Court rejects that argument for the same reasons as those set forth in Section II(B)(1) of this Opinion and Order. The Court also agrees with Defendants that, since Prosecutor Defendants are immune from liability for malicious prosecution, they are immune from liability for the resultant emotional distress from any such prosecution. Accordingly, Prosecutor Defendants are immune from liability on Count One. Defendant O'Brien is also immune from liability on Count Three, to the extent it relates to the alleged malicious prosecution.

### 2. *Delaware County*

Pursuant to Ohio Revised Code § 2744.02(A)(1), a "political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in

connection with a governmental or proprietary function." Section 2744.02(B) sets forth five exceptions to that general statement; however, Plaintiffs concede that no such exceptions apply.

Plaintiffs argue instead that their claims rest on governmental *inaction* (i.e., failure to investigate), such that Defendants' alleged conduct is not an act in connection with a governmental function within the meaning of § 2744.02(A)(1). Thus, Plaintiffs conclude, Defendants cannot invoke immunity for performing governmental functions when they did not take any action whatsoever. The problem with Plaintiffs' argument is simple: if Defendants had not taken any action, then Plaintiffs would not have suffered any harm. The harm Plaintiffs allegedly suffered was caused by the arrest, prosecution, and subsequent trial. Defendants' alleged inaction—the failure to investigate—is relevant to Plaintiffs' claim that Defendants lacked probable cause, but is not a claim for relief standing alone. In other words, Plaintiffs' claims do not rely on governmental inaction. Their argument therefore fails. Plaintiffs do not offer any additional arguments as to why § 2744.02(A)(1) does not apply in this case.

Finding that the plain language of § 2744.02(A)(1) applies, the Court finds that Delaware County is immune from damages in this action. Because Plaintiffs' Complaint seeks only monetary relief, Delaware County is immune from liability for Plaintiffs' state law claims.

### 3. Law Enforcement Defendants

Pursuant to Ohio Revised Code § 2744.03(A)(6), employees of a political subdivision are immune from liability unless they acted "manifestly outside the scope of [their] official responsibilities," "with malicious purpose, in bad faith, or in a wanton or reckless manner," or unless the Code expressly imposes liability on them. Law Enforcement Defendants argue that Plaintiffs failed to allege facts to support the inference that they acted with malice.

24

Although the Court rejects Plaintiffs' argument that their claims are based on inaction such that § 2744.03(A)(6) does not apply, it agrees with Plaintiffs that their allegations, taken as true and viewed in the light most favorable to them, plausibly support a finding of malice on the part of Law Enforcement Defendants.  As stated above, Plaintiffs alleged that Law Enforcement Defendants knowingly gave false testimony to the grand jury and then urged Plaintiffs' prosecution, among other things.  The Court finds that these allegations are sufficient at the pleadings stage to invoke § 2744.03(A)(6).  *See, e.g., Nungester v. City of Cincinnati*, 100 Ohio App. 3d 561, 566, 654 N.E.2d 423 (1st Dist. 1995) (finding that a police officer's conduct in concealing material evidence and encouraging the presentation of false testimony could show "malicious purpose" pursuant to § 2744.03(A)(6)).  Law Enforcement Defendants therefore are not entitled to § 2744.03 immunity at this stage of the litigation.

## III.    CONLUSION

For the foregoing reasons, the Court **GRANTS** Defendants Delaware County Commissioners, Delaware County Sheriff's Department, and Delaware County Prosecutor's Office motion to dismiss (ECF No.21); **GRANTS IN PART** and **DENIES IN PART** Defendants John Doe Three, Carol O'Brien, Greg Tapocsi, and Brian Walters' motion to dismiss (ECF No. 20), and **GRANTS IN PART** and **DENIES IN PART** Defendants Walter L. Davis III, John Doe One, John Doe Two, and Kevin Ullom's motion to dismiss (ECF No. 19).  The Court takes the following actions with respect to each claim for relief:

- **DISMISSES** Count One against Delaware County Commissioners, Delaware County Sheriff's Department, Delaware County Prosecutor's Office, John Doe Three, Carol O'Brien, Greg Tapocsi, and Brian Walters;

- **DISMISSES** Count Three against Delaware County Commissioners, Delaware County Sheriff's Department, Delaware County Prosecutor's Office, John Doe Three, Greg Tapocsi, and Brian Walters.  The Court also **DISMISSES** Count

25

Three against Carol O'Brien to the extent Count Three is grounded in Plaintiffs' malicious prosecution allegations;

- **DISMISSES** Count Four against John Doe Three, Carol O'Brien, Greg Tapocsi, and Brian Walters;

- **DISMISSES** Count Six in its entirety; and

- **DISMISSES** Count Seven against Delaware County Commissioners, Delaware County Sheriff's Department, Delaware County Prosecutor's Office, John Doe Three, Carol O'Brien, Greg Tapocsi, and Brian Walters.

**IT IS SO ORDERED.**

> **/s/ Gregory L. Frost**
> **GREGORY L. FROST**
> **UNITED STATES DISTRICT JUDGE**